*In re* OPINION TO THE GOVERNOR.

JANUARY 26, 1939.

January 26, 1939.

To His Excellency, William H. Vanderbilt,
    Governor of the State of Rhode Island
        and Providence Plantations:

    We have received from Your Excellency a request for our written opinion, in accordance with the provisions of

sec. 2 of article XII of amendments to the constitution of this state, upon the following questions, viz.:

"Does Chapter 2087, Public Laws 1934, approved April 27, 1934, authorize upon the approval and under the conditions therein prescribed the borrowing before July 1, 1939 for the uses of the State, the sum of $950,000, in addition to the amount of $50,000, as limited by the Constitution, in view of the fact that the amount of $750,000 has been previously borrowed under the authority of this Chapter and has been fully paid?

"If the answer to the above question is in the negative, what amount of money, if any, can now be borrowed for such purposes under the authority and conditions in this Chapter?"

In response to these questions, we have the honor to submit the following opinion:

The proposition which, in accordance with public laws 1934, chapter 2087, sec. 2, was submitted to the people of the state and approved by a majority vote on May 18, 1934, reads as follows: "Shall the general assembly have the consent of the people of the state to authorize, by acts or resolutions heretofore or hereafter passed, the borrowing at any time or from time to time up to July 1, 1939, in addition to the amount of fifty thousand dollars which it is now constitutionally authorized to borrow, the sum of nine hundred fifty thousand dollars or so much thereof as it may deem necessary for the uses of the state, provided that the aggregate amount of money so borrowed under such consent and unpaid may at any time be equal to but not in excess of said sum of nine hundred fifty thousand dollars?"

This proposition was submitted to the people because of the following portion of sec 13 of article IV of the state constitution: "The general assembly shall have no power, hereafter, without the express consent of the people, to incur state debts to an amount exceeding fifty thousand

dollars, except in time of war, or in case of insurrection or invasion . . . ."

That portion of sec 3 of chap. 2087, which is pertinent to these questions which have been submitted to us is as follows: "If and when the electors of the state shall have approved said proposition and their approval shall have been certified to the governor and the general treasurer by the secretary of state, the general treasurer is hereby authorized, with the written approval of the governor and the state commissioner of finance, to borrow not to exceed the sum of one million dollars for the uses of the state; and for that purpose, in behalf of the state and with the written approval of the governor and the state commissioner of finance, at any time or from time to time as they may deem it necessary, before July 1, 1939, to execute, issue and dispose of promissory notes or bonds of the state for any sum or sums so borrowed, payable at the end of such periods from their respective dates and with interest at such rate or rates as they may deem advisable in any coin or currency of the United States of America which at the time of payment shall be legal tender for the payment of public and private debts; and to place the proceeds of the disposal of such notes or bonds, including any premium or premiums which may be received in the disposal thereof, in the general funds of the state in the general treasury. The aggregate amount of the principal of such notes or bonds outstanding at any one time may equal but shall not exceed the sum of one million dollars. . . ."

We must first determine what is the proper construction of the language above quoted from sec. 3 and then determine whether that language, as thus construed, makes the section void for unconstitutionality, because contrary to the above-quoted provision of the constitution. There are two possible constructions. By one of these the total amount which the general treasurer was given authority to borrow was limited to $1,000,000, that total being made

up of all borrowings, even though some had been repaid before some of the other borrowings were made. By the other of these constructions the limit would be $1,000,000 but the total to which it would be applied would be the total amount of indebtedness, for money so borrowed, *outstanding and unpaid at any one time.* Under this latter construction, in determining at any time whether more money could be borrowed without exceeding the limit, notes or bonds which had been issued but had afterwards been paid and discharged would be disregarded.

In deciding between two reasonable constructions of a statutory provision, one of which would raise a serious question of its constitutionality and the other would not, the latter construction should be adopted, according to a well-recognized rule of statutory construction. In deciding between the two above-stated constructions of the provision quoted from sec. 3, we have been guided by that rule; and we have also received some assistance from a comparison of the language of that provision with the language of the proposition approved by the people.

We first observe that at its very beginning the proposition says: "Shall the general assembly have the consent of the people of the state to authorize, by acts or resolutions heretofore or hereafter passed, the borrowing . . . ." etc. It is clear that chap. 2087 was passed by the general assembly and approved by the governor before the people voted on this proposition; and that the above words "heretofore or hereafter passed" directed the voters' attention to that chapter. Those who voted in favor of the proposition were therefore doing two different things. One was consenting to the borrowing of money by the state under and in accordance with sec. 3 of the act already passed by the general assembly, within the limits and by the procedure prescribed *in that act.* The other was consenting to the borrowing of money by the state under *future* acts or resolutions of the general assembly within the limits prescribed in the *proposition.*

When we compare the language in which the limit of the total amount to be borrowed is set forth in the *proposition* with the corresponding language in *sec 3 of the act,* we find important differences. The proposition speaks of the general assembly authorizing "the borrowing at any time or from time to time up to July 1, 1939", beyond the constitutional limit of $50,000, "the sum of nine hundred fifty thousand dollars or so much thereof as it may deem necessary for the uses of the state." In sec. 3 the general treasurer is authorized, "with the written approval of the governor and the state commissioner of finance, to borrow not to exceed the sum of one million dollars for the uses of the state."

In considering this language from sec. 3, we notice that the words "at any time or from time to time", which follow the word "borrowing" in the proposition, are conspicious by their absence in the corresponding place in sec. 3. It is our opinion that with these words absent, the only natural and reasonable construction of this language of sec. 3 is one which limits the total to be borrowed under that section to $1,000.000.

It is true that the language last above quoted from sec. 3 is followed by an authorization to the general treasurer, with the written approval of the governor and the state commissioner of finance, "at any time or from time to time as they may deem it necessary, before July 1, 1939, to execute, issue and dispose of promissory notes or bonds of the state . . . The aggregate amount of the principal of such notes or bonds *outstanding at any one time* may equal but shall not exceed the sum of one million dollars." (italics ours) But it is our opinion that when this last-quoted sentence, relating to notes or bonds, is read in connection with the language above quoted from sec. 3 as to the limit on the amount to be *borrowed,* this sentence is not inconsistent with such language clearly limiting the total amount of borrowings. Moreover, while the last provision in the *proposition* is "that

the aggregate of money so borrowed under such consent *and unpaid* may at any time be equal to but not in excess of said sum of nine hundred fifty thousand dollars", there is no similar provision in sec. 3. (italics ours)

Therefore, after comparing the language of the pertinent part of sec. 3 with the language of the proposition approved by the voters, and after giving due weight to the fact that in our judgment a serious question as to the constitutionality of sec. 3 of the act would arise, if it were otherwise construed, we construe that part of sec. 3 as empowering the general treasurer, with the consents therein described, to borrow before July 1, 1939 a total of $1,000,000, including the $50,000 which the general assembly may authorize to be borrowed without the consent of the people, that limited total being made up of all *borrowings,* even though some or all of them were paid before July 1, 1939.

The information given in the request to us for an opinion shows the approval of the proposition by the voters on May 18, 1934, and also that the total amount borrowed thus far by the general treasurer for the general uses of the state under sec. 3 of chap. 2087 is $750,000, all of which has been repaid. If sec. 3 was valid and operative after the proposition set forth in sec. 2 was consented to by the people, the general treasurer, in our opinion, would have valid authority if he complies with the requirements of sec. 3, as amended by later legislation, to borrow for the general uses of the state a further sum of $250,000, but no more, under sec. 3.

The question still remains to be decided whether sec. 3 of the chapter was valid and operative after the proposition set forth in sec. 2 was consented to by the people. We have already stated in this opinion that the people, by their votes upon the proposition as stated in sec. 2, actually consented to two different things. They consented first to a total borrowing of not to exceed $1,000,000 as already authorized by the enactment of sec. 3; and secondly, they consented to a future borrowing or borrowings in accordance

with such acts or resolutions as might thereafter be passed, that is, subsequently to their giving of such consent.

In our understanding of the questions submitted and in our view of the law, we are not now confronted with any constitutional questions which might arise under the second phase of the proposition as above stated. Conceivably, however, several constitutional questions could arise which would seriously challenge the validity of any act or resolution by the general assembly under the purported consent given to this second phase of the proposition. Whether such a supposed future legislative act, or whether even a new referendum couched in the same language as sec. 2, would be valid without a more specific description of the purposes for which the proceeds of the borrowing were to be used are questions which would immediately arise, in view of the language and spirit of article IV, sec. 13 of our constitution. Within what limits of time such authority, if properly given, must also be exercised, especially if the purpose of the proposition is stated in something less than reasonably specific terms, is another question which might arise. Such questions and possibly others may go not only to the exercise of power under the constitution but to the existence of the power itself.

The general assembly would largely avoid such serious constitutional difficulties, and to that extent forestall future possible constitutional attack, by stating the proposition in any referendum with reasonable particularity, to inform the people of the specific purpose for which the borrowing was to be made. Our investigation of other referenda, authorized by the general assembly from time to time in Rhode Island, indicates that such difficulties were probably kept in mind when stating various propositions to be voted upon by the people. We have found no instance, in our examination covering a long legislative period, wherein a proposition has been referred to the people in such general terms as are contained in sec. 2, purporting to grant authority to a future

general assembly to borrow in excess of the constitutional limit of $50,000. However, as stated, we are not now concerned with this second phase of the proposition.

In our view the question before us is confined solely to the first phase of the proposition, namely, the actual consent of the people to the authorization as previously made in sec. 3. The first phase of the proposition also is not without difficulty but we have applied accepted rules of construction in an effort to prevent inconsistency between different portions of the statute, and to effectuate the primary purpose thereof, if such construction were reasonably possible. Consistent with this construction of sec. 3 and with our view of the questions submitted, we look upon that section as a completed express authorization to the general treasurer, under the conditions specified, to *borrow* for the general uses of the state a maximum *total* of $1,000,000, which authorization was approved by the governor and was later actually consented to by the people.

In such a retrospective view, we are of the opinion that sec. 3, chapter 2087, P. L. 1934, approved April 27, 1934, went into full force and effect upon the giving by the people of their consent to the proposition submitted to them; that this section has not been repealed and is valid and operative; that the total amount of borrowing or borrowings that could validly be made under and in accordance with sec. 3 was $1,000,000, including the $50,000 which could be borrowed in accordance with suitable action by the general assembly without submission to the people; that $750,000 of that total borrowing capacity as authorized by this section has been exhausted even though that amount has all been repaid; and that the general treasurer now has valid authority, if he complies with the requirements of sec. 3, as modified by later legislation abolishing the office of state commissioner of finance and transferring his powers and functions to other officers of the state, to borrow under sec. 3 for the

general uses of the state a further sum of $250,000, but no more.

EDMUND W. FLYNN
WILLIAM W. MOSS
ANTONIO A. CAPOTOSTO
HUGH B. BAKER
FRANCIS B. CONDON.